Argued and submitted November 2, 1987, reversed and remanded with instructions
August 10, 1988

## ORECO ENTERPRISES, INC.,
*Respondent,*

*v.*

## FRIZZELL,
dba Associated Geologists,
*Appellant.*

(9281; CA A42416)

758 P2d 875

Walter L. Cauble, Grants Pass, argued the cause for appellant. With him on the briefs was Schultz, Salisbury & Cauble, Grants Pass.

Ralph F. Rayburn, Portland, argued the cause for respondent. With him on the brief was Whipple, Johansen & McClain, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Defendant appeals from a judgment entered after a jury awarded plaintiff $145,000 for defendant's breach of a contract relating to the exploration and development of a mine. We reverse and remand.

Plaintiff is the owner of the Oregon King Mine in Jefferson County. In 1977, it acquired the mine, which once had produced substantial amounts of gold and silver. The mine consists of several patented and unpatented mining claims, a mill, several buildings and a dump site. Defendant is a geologist who assists mine owners in exploring and developing mines. He was familiar with the history of the mine and arranged to meet with Seidel, plaintiff's president, and Wood, the principal of a Canadian mining company called Condaka.

As a result of that meeting and subsequent discussions, Seidel, for plaintiff, and defendant entered into a "Letter of Agreement" on July 17, 1981. That agreement defined the terms under which plaintiff would lease the mine to defendant, with an option to purchase it for three million dollars on stated terms. Defendant paid plaintiff $5,000 for the rights that it obtained under the agreement, including the right to take a reasonable time to study geological reports before entering into a formal lease-option. Defendant anticipated that he would receive financial support from Condaka in return for a share of the profits. The agreement was assignable and provided that defendant had the unilateral right to terminate that agreement *and* the formal lease option that the parties anticipated that they would enter into "as soon as practicable after issuance of title opinion." Clearly, that agreement was not a lease and was not the final agreement of the parties.

A "Lease and Option" dated July 21, 1981, was signed by Seidel and was acknowledged by him on September 26, 1981. On November 24, an addendum to the Letter of Agreement was signed, and on April 17, 1982, a modification of the Lease and Option was signed by plaintiff. On May 4, 1982, defendant's signature on the Lease and Option and the April 17 modification were acknowledged. The terms of the Lease and Option conformed generally to the Letter of Agreement. As modified, it required defendant, among other things, to make a $45,000 payment to plaintiff on September 1, 1982,

and a $100,000 payment on July 15, 1983. Although defendant retained the right to terminate the Lease and Option at any time, under its provision he was required to give written notice to plaintiff at least 60 days in advance of the termination date specified in the notice. Further, if defendant remained in default for 30 days after written notice specifying the default, plaintiff could terminate by giving written notice. In a separate provision, defendant was required, after any termination of the Lease and Option, to deliver promptly to plaintiff a quitclaim deed covering all of the leased rights and property.

In June, 1982, defendant hired a firm to take core samples. After two holes were drilled and the samples were analyzed, Condaka told defendant that it did not want to continue exploration. Defendant told Seidel over the telephone that he would have to terminate the agreement, and on July 28, 1982, he sent a letter to Seidel advising that Condaka had withdrawn from the project. Defendant stated his willingness to "keep the lease active" if plaintiff would extend the payment provisions and assist him in finding a company to develop the mine. Plaintiff did not respond. When the $45,000 payment due in September, 1982, was not made, plaintiff wrote defendant on March 11, 1983, advising him of the default and notifying him that it was terminating the lease. It enclosed a quitclaim deed for defendant to execute and return to plaintiff. Defendant did not execute the deed until January, 1985.

After the $100,000 payment fell due on July 15, 1983, plaintiff brought this action for breach of the lease, alleging damages of $145,000 for the two payments that defendant failed to pay and $50,000 that defendant was required to expend, but did not, under the lease for exploring and developing the Oregon King. The jury returned a general verdict for plaintiff for $145,000.

Defendant assigns error to the trial court's failure to grant his motions for directed verdict, partial directed verdict and judgment notwithstanding the verdict. He contends that his motion for directed verdict should have been granted, because the termination provision of the Letter of Agreement prevails over the provision in the Lease and Option. Therefore, he argues, he was entitled to terminate the lease without notice and did so before either payment was due plaintiff. As a

fallback position, he argues that his motion for a partial directed verdict should have been granted, because, even if he did not terminate the lease, plaintiff did so before the $100,000 payment was due.

Plaintiff contends that the Lease and Option supersedes the Letter of Agreement as a matter of law, that defendant failed to terminate the lease according to its terms and that plaintiff's letter of March 11, 1983, was, as a matter of law, an unsuccessful attempt to terminate the lease, because defendant failed to execute and deliver the quitclaim deed required by the lease after any termination.

■ The trial court did not err in denying defendant's motion for a directed verdict on all claims. We agree with the trial court that it cannot be said as a matter of law that the Letter of Agreement termination clause prevailed over that in the Lease and Option.[1] At best, from defendant's standpoint, it was a jury question. The same is true of the question of whether defendant had terminated the lease. Both questions were submitted to the jury,[2] and the jury found against him on both questions.

■ However, defendant's motion for partial directed verdict on plaintiff's claim for $100,000 should have been granted. There is no dispute but that plaintiff notified defendant by letter on March 11, 1983, that the lease was terminated. Neither party argues that plaintiff did not have the right to terminate the lease on defendant's default, even if the Letter of Agreement termination provision controlled. We understand defendant's position to be that, as to him, that provision controlled but, as to plaintiff, the Lease and Option provision controlled and no one contends that the notice was not in accordance with that provision. Plaintiff's only argument is that the letter was only an attempt to terminate, because defendant refused to execute and deliver a quitclaim deed until January, 1985. However, the provision that required a quitclaim deed after termination does not make the

---

[1] Plaintiff contended that the Lease and Option termination provision controls as a matter of law, because it was the definitive final agreement anticipated by the Letter of Agreement. The trial court ruled that it was for the jury to decide which provision controlled. Given the posture of the case on appeal, the question of whether the Lease and Option controls as a matter of law is not before us.

[2] Defendant does not argue that the jury was improperly instructed.

deed a condition precedent to an effective termination; it is simply an obligation of defendant "on any termination."

We conclude that, as a matter of law, plaintiff terminated the lease before the $100,000 payment was due, after which defendant ceased to be obligated for that payment. The motion for a partial directed verdict should have been granted.[3]

Reversed and remanded with instructions to enter judgment for plaintiff in the amount of $45,000, with interest from September 1, 1982, plus costs and attorney fees.

---

[3] Plaintiff argues that the jury's general verdict for $145,000 is not necessarily a combination of the $45,000 and $100,000 payments that it alleged were owed by defendant. The amended complaint alleged three claims for relief: the two missed payments and $50,000 damages for breach of the lease provision requiring defendant to expend that amount on exploring and developing the Oregon King. The judgment awards plaintiff damages of $45,000, with interest from September 1, 1982, and $100,000, with interest from July 15, 1983. The parties agreed to the form of judgment, and it is clear that the award of $100,000, plus interest from July 15, 1983, was for the payment allegedly due on that date.